## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                    Case. No. 22-31870

EllDan Corp.,

          Debtor.                                  Chapter 11

---

EllDan Corp. and
Kevin Steele,

               Plaintiffs,              Adv. Proc. No. 23-03005

v.

Fantastic Sams Franchise Corp.,

             Defendant.

---

## MEMORANDUM DECISION AND ORDER

The pleadings filed by Fantastic Sams Franchise Corp. ("FSFC") at the outset of this adversary proceeding seek injunctive relief on five counts: (1) breach of contract for violation of covenants not to compete; (2) violation of the Lanham Act; (3) violation of the Minnesota Deceptive Trade Practices Act; (4) common-law trademark infringement; and (5) common-law unfair competition. [FSFC Answer, ¶¶ 63-104, ECF No. 4.] FSFC filed an expedited motion for preliminary injunction (the "Motion"). [ECF No. 9.] Debtor filed a response in opposition. [ECF No. 22.] At the Court's invitation, the parties also submitted supplemental briefing. [ECF Nos. 61-62.]

Debtor and FSFC resolved the Lanham Act allegations by executing and

filing a Stipulation and Consent to Order for Permanent Injunctive Relief (as amended, the "IP Stipulation"). [ECF No. 58.] The parties also executed and filed a comprehensive Stipulation of Undisputed Facts in connection with the Motion (as amended, the "Fact Stipulation" or "Stip.") [ECF No. 64.] The parties remain in disagreement, however, about the legal effect of certain covenants not to compete in their prepetition agreements.

This Court conducted an evidentiary hearing on April 6, 2023. The Court heard oral argument on the supplemental briefing on May 3, 2023. Appearances were noted on the record. During the May 3, 2023 hearing, the Court raised the possibility of summary judgment independent of the Motion pursuant to Fed. R. Civ. P. 56(f)(3) (made applicable to adversary proceedings by Fed. R. Bankr. P. 7056). Both parties consented on the record to summary judgement. At the conclusion of the hearing, the Court took the matter under advisement. The matter is now ready for disposition.

This Memorandum Decision and Order is based on all information available to the Court and constitutes its findings of fact and conclusions of law under Fed. R. Bankr. P. 7052. The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157(c) and 1334. All parties have consented to entry of final orders by this Court. [ECF Nos. 17 and 65.] As explained hereinafter, FSFC is entitled to a summary judgment in this matter: the Non-Compete Covenants (defined hereinafter) are enforceable, Debtor has breached the Non-Compete Covenants, and Debtor and Mr. Steele shall be enjoined from continuing to operate in violation of such covenants

notwithstanding the Debtor's rejection of the parties' prepetition agreements under

Section 365 of the Bankruptcy Code.

## SUMMARY OF UNDISPUTED FACTS

FSFC is the franchisor of the "Fantastic Sams" brand of hair salons. [Stip.

¶ 1.] Debtor purchased seven salons from a former franchisee of FSFC. [Stip. ¶ 5.]

Debtor and FSFC entered into seven franchise agreements in December of 2018

(collectively, the "FSFC Franchise Agreements"), pursuant to which Debtor was

authorized to operate a Fantastic Sams-branded hair care business at each of the

following locations (collectively, the "Original Locations"):

1.  1038 East Country Road 42, Burnsville, MN 55337 ("Burnsville");

2.  1442 Yankee Doodle Road, Eagan, MN 55121 ("Eagan-Yankee Doodle");

3.  300 Western Avenue NW, Faribault, MN 55021 ("Faribault");

4.  9090 Buchanan Trail, Inver Grove Heights, MN 55057 ("Inver Grove");

5.  2075 Cliff Road, Suite 102, Eagan, MN 55122 ("Eagan-Cliff Road");

6.  1020 Highway 3 S., Northfield, MN 55057 ("Northfield"); and

7.  14873 So. Robert Trail, Rosemount, MN 55068 ("Rosemount").

[Stip. ¶ 4.]

In 2021, Debtor expressed concerns about its solvency to FSFC and asked for

a reduction of its royalty fees. [Stip. ¶ 8.] In February 2022, FSFC agreed to a

royalty fee abatement for a 26-week period. [Stip. ¶ 8.] By August 2022, Debtor

stopped making all payments to FSFC. [Stip. ¶ 9.] In a letter to FSFC, Debtor cited

its financial condition and closure of two salon locations as reasons for its

nonpayment. [Stip. ¶ 9.] On September 2, 2022, FSFC sent Debtor a Notice of
Default for its failure to pay amounts due under the FSFC Franchise Agreements.
[Stip. ¶ 11.] Debtor did not cure. [Stip. ¶ 11.]

Debtor commenced this bankruptcy case on November 10, 2022 (the "Petition
Date"). Debtor then filed a motion seeking an order approving the rejection of the
FSFC Franchise Agreements. In re EllDan Corp., Case No. 22-31870 (Bankr. D.
Minn. Dec. 12, 2022) [ECF No. 30]. This Court entered an order granting such
motion on January 11, 2023. In re EllDan Corp., Case No. 22-31870 [ECF No. 51].
Thereafter, Debtor continued to operate under the name "Sota-Styles" at four of the
Original Locations. [Stip. ¶ 16.] Debtor later closed another the Burnsville Original
Location and opened a new "Sota-Styles" salon at 7690 160th St. W., Lakeville, MN
55044 ("Lakeville"). [Stip. ¶ 16.]

Debtor is currently operating salons in Lakeville, Eagan-Yankee Doodle,
Faribault, and Inver Grove (collectively, the "Current Locations") [Stip. ¶¶ 19-20.]
Three of the four Current Locations are Original Locations: Eagan-Yankee Doodle,
Faribault, and Inver Grove. [Stip. ¶ 19.] The fourth location, Lakeville, is less than
5 miles away from the Original Location in Burnsville [Stip. ¶ 21.]. Lakeville is less
than 2.5 miles away from the nearest Fantastic Sams franchisee, which is located at
15624 Pilot Knob Rd #100, Apple Valley, MN 55124 ("Apple Valley"). [Stip. ¶ 22.]

## DISCUSSION

### I.    Summary Judgment Standard

Fed. R. Civ. P. 56(f)(3), made applicable to this proceeding by Fed. R. Bankr. P. 7056, provides that "[a]fter giving notice and reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." <u>Merechka v. Vigilant Ins. Co.</u>, 26 F.4th 776, 787 (8th Cir. 2022). It is widely acknowledged that courts "possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Granting summary judgment under these circumstances accomplishes the principal purpose of Fed. R. Civ. P. 56— expeditious disposition of a case. <u>Interco Inc. v. National Sur. Corp.</u>, 900 F.2d 1264, 1269 (8th Cir. 1990). Summary judgment is appropriate where there is "no genuine issue of material fact" and where the moving party is "entitled to judgment as a matter of law." <u>Celotex Corp.</u>, 477 U.S. at 323.

FSFC originally filed an expedited motion for preliminary injunction rather than a motion for summary judgment. At the May 3, 2023 hearing, the Court suggested the parties could obtain a more effective resolution of their dispute if the Court employed Rule 56(f)(3) to make a final determination about the enforceability of the Non-Compete Covenants. After hearing testimony and reviewing the comprehensive Fact Stipulation, the Court identified for the parties all undisputed material facts in this case. The Court provided the parties an opportunity to

respond or object. Both parties affirmatively stated summary judgment was

appropriate at this juncture. Accordingly, with the consent of the parties, the Court

now reviews this matter for summary judgment under Rule 56(f)(3).

## II.   The Post-Termination Covenants Not to Compete are Enforceable

The respective rights of the parties in this matter are set forth in the FSFC

Franchise Agreements. Debtor and Mr. Steele executed seven FSFC Franchise

Agreements, all of which include the following limitations on their right to operate a

hair care business after termination of the parties' business relationship (together,

the "Non-Compete Covenants"):

> (9) To refrain, for a period of 2 years from the effective date of
> expiration or termination of this Agreement, from directly or indirectly
> participating as an owner, partner, member, director, officer,
> employee, consultant, lender or agent, or serve in any other capacity in
> any Haircare Business, within a 5-mile radius of the Salon (including
> but not limited to the Salon Location);
>
> (10) To refrain from directly or indirectly participating as an owner,
> partner, member, director, officer, employee, consultant, lender or
> agent, or serve any other capacity in any Haircare Business, within a
> 2.5-mile radius of any Fantastic Sams Salon, for a period of 2 years
> from the actual date of expiration or termination (provided, however,
> Sections 12.d.9 and 12.d.10 shall not apply to any Haircare Business
> currently operating under the System as a Fantastic Sams salon);

[Ex. A, Sections 12.d.9 and 12.d.10, ECF No. 30; Stip. ¶ 23.] Moreover, the parties

expressly stipulated that "the periods and geographical restriction within which

[FSFC] has reserved its rights regarding the continued operation by [Debtor and

Mr. Steele] are essential to this Agreement and are fair and reasonable

restrictions…" [Ex. A, Section 12.d., ECF No. 30.]

In Section 17.k of the FSFC Franchise Agreements, the parties contractually agreed that enforcement and construction of the aforementioned Non-Compete Covenants will be governed by Minnesota law. [Stip. ¶ 23.]

Non-compete clauses in franchise agreements are generally enforceable under Minnesota law if they are "for a just and honest purpose, for the protection of a legitimate interest of the party in whose favor it is imposed, reasonable as between the parties, and not injurious to the public." Adcom Express, Inc. v. EPK, Inc., No. C6-95-2128, 1996 WL 266412, at *4 (Minn. Ct. App. May 21, 1996) (citing Bennet v. Storz Broadcasting Co., 134 N.W.2d 892, 898-99 (Minn. 1965)); Webb Publ'g Co. v. Fosshage, 426 N.W.2d 445, 450 (Minn. Ct. App. 1988).

Under Minnesota law, a franchisor has a just and honest purpose and a legitimate interest in protecting itself from the competition of a former franchisee operating in the same market. Adcom Express, Inc., 1996 WL 266412, at *4; see also Anytime Fitness, LLC v. Edinburgh Fitness LLC, Civ. No. 14-348 (DWF/JJG), 2014 WL 1415081, at *5 (D. Minn. Apr. 11, 2014). Similarly, upon termination of a franchisee relationship, a franchisor has a legitimate interest in its ability to resell or develop a new business within a specific area and to protect a franchisor's investment in its goodwill and customer base in such area. Novus Franchising, Inc. v. Livengood, Civ. No. 11-1651 (MJD/TNL), 2012 WL 38580, at *8 (D. Minn. Jan. 9, 2012). Other legitimate business interests include protection of a franchisor's proprietary methods, trade secrets, and other confidential information. Roth v.

Gamble-Skogmo, Inc., 532 F. Supp. 1029, 1031 (D. Minn. 1982).

The duration and geographic scope of the Non-Compete Covenants are reasonable under Minnesota law. Courts look to the geographical and temporal constraints of a noncompete clause when determining whether the noncompete clause is reasonable. Bennett, 134 N.W.2d at 898-99. Under the FSFC Franchise Agreements, Debtor and Mr. Steele agreed that the Non-Compete Covenants would apply for a 2-year period after termination of such agreements. [Stip. ¶ 23.] The restrictions apply within a 5-mile radius of any Original Location and a 2.5-mile radius of any other FSFC franchisee. [Id.] Minnesota courts routinely find similar non-compete clauses to be reasonable in the context of terminated franchisor-franchisee relationships. See, e.g., RPC Acquisition Corp. v. J&D World Corp., Civ. No. 13-1400 (DWF/LIB), 2013 WL 3338784, at *3 (D. Minn. July 2, 2013) (6-mile clause was reasonable for hair care business); Novus v. AZ Glassworks, Civ. No. 12–1771 (MJD/TNL), 2013 WL 1110838, at *7 (D. Minn. Mar. 18, 2013) (2-year, 10-mile clause); Powerlift Door Consultants, Inc. v. Shepard, Civ. No. 21-1316 (WMV/ECW), 2021 WL 2911177, at *4 (D. Minn. July 12, 2021) (3-year clause); Anytime Fitness, LLC v. Edinburgh Fitness LLC, Civ. No. 14-348 (DWF/JJG), 2014 WL 1415081, at *5 (D. Minn. Apr. 11, 2014) (2-year, 20-mile clause).

Lastly, the public interest is not harmed by enforcing the Non-Compete Covenants. If Mr. Steele had executed the Non-Compete Covenants in his capacity as a salon employee, the restrictions would be subject to greater scrutiny. Covenants not to compete are disfavored to the extent they limit the right of a

person to work and earn a livelihood. <u>Bennett</u>, 134 N.W.2d at 899. Conceptually,
Minnesota law aims to "protect the average individual employee who, as a result of
his unequal bargaining power, may be found in oppressive circumstances." <u>Id.</u> But
such policy concerns are inapposite here. Minnesota courts recognize a distinction
between non-compete clauses associated with individual employment contracts and
those arising in a business context. <u>Id.</u> at 898; <u>see</u> <u>TENA Companies, Inc. v. Ellie</u>
<u>Mae, Inc.</u>, Civ. No. 21-1814 (NEB/JFD), 2022 WL 624644 at *3 (D. Minn. Mar. 3,
2022). Unlike an "average individual employee", Mr. Steele and the Debtor executed
the FSFC Agreements in connection with the purchase of seven existing businesses
in a transaction valued at approximately $1 million. [Stip. ¶ 5.] Therefore, a
"different measure of reasonableness," one that recognizes the business-to-business
nature of a franchisor-franchisee relationship, must be applied in this context. <u>See</u>
<u>Bennett</u>, 134 N.W.2d, at 899. For all the foregoing reasons, this Court has
determined the Non-Compete Covenants are reasonable and enforceable under
Minnesota law.

## III.    Debtor Breached the Non-Compete Covenants by Operating in the Current Locations

Debtor has breached the Non-Compete Covenants. First, the FSFC Franchise
Agreements were terminated by Debtor's rejection, the effective date of which
occurred on January 11, 2023. <u>In re EllDan Corp.</u>, Case No. 22-31870, [ECF No. 51].
Thus, the Non-Compete Covenants apply to Debtor's business activities until
January 11, 2025. [Ex. A, Sections 12.d.9 and 12.d.10, ECF No. 30; Stip. ¶ 23.]

Second, there is no dispute that Debtor is currently operating four salons

within the restricted geographic area set forth in the Non-Compete Covenants. Debtor is currently operating three "Sota-Styles" salons in the following Original Locations: Eagan-Yankee Doodle, Faribault, and Inver Grove. [Stip. ¶ 19.] Debtor's operation of the Eagan-Yankee Doodle, Faribault, and Inver Grove salons in the Original Locations constitutes a breach of Section 12.d.9 of the FSFC Franchise Agreements. Debtor is currently operating a fourth "Sota-Styles" salon in Lakeville. [Stip. ¶ 21.] Because the Lakeville salon is less than 5 miles away from the Original Location in Burnsville and less than 2.5 miles away from the nearest FSFC franchisee in Apple Valley [Stip. ¶¶ 21-22], Debtor's operation of the Lakeville salon constitutes a breach of both Sections 12.d.9 and 12.d.10 of the FSFC Franchise Agreements.

## IV.    FSFC is Entitled to Injunctive Relief

At the May 3, 2023 hearing, Debtor argued that its rejection of the FSFC Franchise Agreements under Section 365 of the Bankruptcy Code eliminated the FSFC Agreements in their entirety, or alternatively, it limited FSFC's available remedy to filing a proof of claim for rejection damages in its main bankruptcy case. This Court has considered and rejected this argument. Debtor's rejection constitutes a breach of the FSFC Franchise Agreements; it does not cause the agreements to be rescinded. In re Elldan Corp., Case No. 22-31870, [ECF No. 51].

The Code expressly states that Debtor's rejection of an executory contract "constitutes a breach of such contract." 11 U.S.C. § 365(g). "'Breach' is neither a defined nor a specialized bankruptcy term. It means in the Code what it means in

10

contract law outside bankruptcy." <u>Mission Prod. Holdings, Inc. v. Tempnology, LLC</u>, 139 S. Ct. 1652, 1658 (2019) (citing <u>Field v. Mans</u>, 516 U.S. 59, 69 (1995)). Stated differently, rejection did not extinguish the FSFC Franchise Agreements. Rather, it left FSFC to determine what its rights and remedies would be under applicable non-bankruptcy law for Debtor's breach of the FSFC Franchise Agreements.

If FSFC were seeking monetary damages from the Debtor, then its current remedy would be limited to filing a proof of claim for rejection damages in accordance with Fed. R. Bankr. P. 3002(c)(4). However, to the extent FSFC seeks the equitable remedy of injunctive relief for Debtor's breach of the Non-Compete Covenant, Debtor's rejection of the FSFC Franchise Agreements did not modify FSFC's legal entitlement to such relief.

Under the FSFC Franchise Agreements, Debtor and Mr. Steele expressly agreed that FSFC would be entitled to injunctive relief upon their breach of the Non-Compete Covenants. Section 12.d of the FSFC Franchise Agreements clearly contemplates that FSFC will be entitled to seek equitable remedies for Debtor's or Mr. Steele's breach:

> [Debtor and Mr. Steele] acknowledges that breach by [Debtor and Mr. Steele] of one or more of its obligations under this Section 12 might cause [FSFC] to suffer irreparable harm, namely harm for which damages would be an inadequate remedy.

[Ex. A, Section 12.d, ECF No. 30.] The parties also executed an addendum with covenants specific to all FSFC franchisees in Minnesota (the "Addendum"). Section 4 of the Addendum also contemplates that FSFC will be entitled to pursue equitable

remedies for breach:

> [I]t is mutually agreed that in the event of a breach or threatened
> breach of any of the terms of this Agreement, the other party will
> forthwith be entitled to seek an injunction restraining such breach
> and/or a decree of specific performance, without showing or proving
> any actual damage…"

Notwithstanding Debtor's rejection of the FSFC Franchise Agreements under

Section 365, FSFC remains contractually entitled to injunctive relief for Debtor's

and Mr. Steele's breach of the Non-Compete Covenants.

## V.   FSFC's Remaining Claims are Mooted by the IP Stipulation

FSFC also sought injunctive relief for alleged violations of the Lanham Act,

the Minnesota Deceptive Trade Practices Act (MDTPA), common-law trademark

infringement, and common-law unfair competition. [Answer, Counterclaims of

FSFC, ¶¶ 72-104, ECF No. 4.] To resolve FSFC's Lanham Act claims, the parties

executed the IP Stipulation under which Debtor already consented to a permanent

injunction with respect to its alleged Lanham Act violations. [¶¶ 7, 9-17, ECF No.

58.] There is no additional relief required or available to FSFC with respect to the

alleged Lanham Act violations.

Although the IP Stipulation purports to resolve only Lanham Act violations,

the Court finds FSFC's remaining claims have also been fully resolved by the IP

Stipulation. FSFC's common-law trademark infringement claim, common-law

unfair competition, and MDTPA claims are coextensive with its claims under the

Lanham Act. See DaimlerChrysler AG v. Bloom, 315 F.3d 932, 935 n.3 (8th Cir.

2003); SYT Solutions, LLC v. Burger, Civ. No. 20-794 (JRT/KMM), 2021 WL

101123, *7 (D. Minn. Jan. 12, 2021) ("Despite their different origins, the elements

for proving trademark infringement claims under the common law, the MDTPA,

and the Lanham Act mirror each other, and Courts analyze them coextensively.").

These claims are coextensive because they rely on a determination of the likelihood

of confusion as to the allegedly infringing use of the marks. See, e.g., Davis v. Walt

Disney Co., 430 F.3d 901, 903 (8th Cir. 2005). Again, Debtor has already consented

to a permanent injunction and there is no additional relief required or available to

FSFC with respect to its common-law trademark infringement claim, common-law

unfair competition, and MDTPA claims. Where the harmful conduct has been

discontinued and where there is no real risk of future injury, then injunctive relief

must be denied. Rinne v. Camden County, 65 F.4th 378, 386 (8th Cir. 2023).

Accordingly, FSFC's claims under MDTPA, common-law trademark infringement,

or common-law unfair competition are moot and FSFC is not entitled to any further

injunctive relief.

## CONCLUSION

The Non-Compete Covenants are enforceable under Minnesota law. Debtor

breached the Non-Compete Covenants by operating hair care businesses in the

Eagan, Faribault, Inver Grove Heights, and Lakeville locations. FSFC is entitled to

equitable relief under the express terms of the FSFC Franchise Agreements.

Therefore, Debtor shall be enjoined from continuing to operate its business in the

Current Locations, or any other location that violates the Non-Compete Covenants,

until expiration of the 2-year non-compete period required by the FSFC Franchise

Agreements. Requests for additional injunctive relief set forth in the original motion were mooted by the IP Stipulation and related permanent injunction.

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY ORDERED:**

1. Debtor (as well as its shareholders, members, partners, and managers) and Kevin Steele and persons in his immediate family (including spouses, domestic partners, parents or children), must immediately cease to operate hair care businesses at any of the following locations: 1442 Yankee Doodle Road, Eagan, MN 55121; 300 Western Avenue NW, Faribault, MN 55021; 9090 Buchanan Trail, Inver Grove Heights, MN 55057; and 7690 160th St. W., Lakeville, MN 55044.

2. Debtor (as well as its shareholders, members, partners, and managers) and Kevin Steele and persons in his immediate family (including spouses, domestic partners, parents or children), are further ENJOINED from owning or operating a hair care business in any location prohibited by Sections 12.d.9 or 12.d.10 of the FSFC Franchise Agreements until January 11, 2025.

3. Any other request for injunctive relief in the Motion is DENIED as moot.

**IT IS SO ORDERED.**

DATED: *May 11, 2023*

*/e/Kesha L. Tanabe*
_____
Kesha L. Tanabe
United States Bankruptcy Judge